**NOT FOR PUBLICATION – NOT PRECEDENTIAL**

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| TEA GARDEN OF RATTAN, INC., )<br>    Plaintiff, )<br>v. )<br> )<br>UNITED STATES OF AMERICA, U.S. )<br>SMALL BUSINESS ADMINISTRATION, )<br>BEAL BANK FSB, ANDREW BEAL, LPP )<br>MORTGAGE LTD., and PROPERTY )<br>ACCEPTANCE CORP. )<br>    Defendants. )<br>_____)<br>LPP MORTGAGE LTD., )<br>    Counterclaimant, )<br>v. )<br> )<br>TEA GARDEN OF RATTAN, INC. and )<br>JEAN CHI CHU, )<br>    Counterclaim Defendants. )<br> )<br>THE UNITED STATE OF AMERICA and )<br>U.S. SMALL BUSINESS )<br>ADMINISTRATION )<br>    Counterclaimants )<br> )<br>v. )<br> )<br>TEA GARDEN OF RATTAN, INC. )<br>    Counterclaim Defendant, )<br>JEAN CHI CHU )<br>    Cross-Claim Defendant, )<br>INFEE COVELL and PAUL COVELL )<br>    Third-Party Defendants. )<br>_____) | CIVIL NO. 2000/175 |

## MEMORANDUM OPINION

Finch, Senior Judge

  THIS MATTER comes before the Court on the Motion for Relief from the 2/14/06

Settlement Agreement Because of Fraud, Mistake, Duress, or Unconscionability filed by Tea Garden of Rattan, Inc. [hereinafter "Tea Garden"]. LPP Mortgage, LTD. [hereinafter "LPP"] and the United States and United States Small Business Administration [collective, hereinafter "the SBA"] oppose such motion.

I.  **Background**

In late 1996, Tea Garden obtained a loan from the SBA in the amount of $660,400. In August 2000, LPP acquired the loan from the SBA. On November 28, 2000, Tea Garden brought this suit against the SBA, LPP and others. On April 9, 2001, LPP counterclaimed for debt and foreclosure against Tea Garden, joining Jean Chi Chu , a joint obligor of Tea Garden , and Ki Kim, a guarantor of the loan. SBA subsequently counterclaimed against Tea Garden, Chu, Paul Covell, Esq., counsel for Tea Garden, and Infee Covell, for fraud and violation of the False Claims Act.

On February 14, 2006, Magistrate Judge Cannon conducted a settlement conference in this case. At the outset of the settlement conference, Ki Kim and LPP announced that they had reached a settlement of LPP's claims against Kim on her guaranty. The terms of such agreement were not disclosed.

With the assistance of the Magistrate Judge, LPP, SBA, Paul Covell, Esq., Infee Covell, Chu, and Kim entered into a handwritten Settlement Agreement which reads in its entirety:

1. Tea Garden and Chiu will stipulate to judgment of foreclosure for full amount of debt [and] atty fees, stipulation to be executed by February 17, 2006. Stipulation to be prepared by LPP Mortgage. Judgment in the approximate amount of $1,345,000.00.

2. LPP will accept $800,000 from Chiu [and] Tea Garden (without setoff of

    sums paid by Ki Kim) if paid on or before May 15, 2006. Payment to be made by wiring funds to:

      Federal Home Loan Bank of Dallas
      ABA # 111040195 credit to Bank
      acct 49802, Attn Loan Payoff Dept.
      loan #228007578, Loan name Tea Garden of Rattan.

3.  If $800 not paid by May 15, 2006, LPP shall have execution of the stipulated judgment w/o further order of the Court, and may seek a deficiency judgment against Tea Garden [and] Chiu.

4.  Tea Garden, Chiu [and] Covells will, by February 17, 2006, execute full release of all other parties, their agents, employees, attorneys & principals, etc. and will dismiss all of their claims with prejudice. Additionally, by Feb. 17, 2006, they will dismiss their appeal of the order appointing receiver with prejudice.

5.  SBA will dismiss counterclaims against Tea Garden, Chiu [and] Covell, with prejudice. Ki Kim will withdraw her motion for Rule 11 sanctions with prejudice.

6.  If $800,000 not paid by May 15, 2006, the Receiver shall forthwith take possession of the property [and] Covell, Tea Garden, [and] Chiu will surrender possession.

    Chu paid $800,000 to LPP in accordance with the terms of the Settlement Agreement.

Tea Garden, however, now seeks relief from the Settlement Agreement.

**II.** **Analysis**

    Tea Garden's primary concern is that it ultimately may become liable for the amount of money that Kim agreed to pay LPP in settlement, which Tea Garden believes to be $560,000. Tea Garden states that if it had known of this potential liability, it would not have entered into the Settlement Agreement. It seeks avoidance of the contract as induced by mistake, fraud or duress. See Restatement (Second) of Contracts § 7 cmt. b.

A.  Mistake

Tea Garden claims that it made a mistake. A mistake of one party may make a contract voidable:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake.

Restatement (Second) of Contracts § 153.[1]

Pursuant to section 154(b) of the Restatement (Second) of Contracts, "[a] party bears the risk of a mistake when . . . he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." Tea Garden, through its principals, knew at the time that it entered into the Settlement Agreement that it did not know the amount that Kim had agreed to pay.[2] Although Tea Garden may have inquired as to the amount, when that information was not forthcoming, it treated its limited knowledge as sufficient and entered into the Settlement Agreement. Because Tea Garden bears the risk of its mistake, the Settlement Agreement is not voidable based on its mistake.

---

[1] The Court applies the law of the Virgin Islands in determining whether the Settlement Agreement is voidable. See Wilcher v. City of Wilmington, 139 F.3d 366, 372 (3d Cir. 1998). The legal precepts as established in the various Restatements of Law apply in the Virgin Islands. 1 V.I.C. § 4.

[2] Tea Garden implicitly recognized that Kim would make some payment on the debt by agreeing in the Settlement Agreement that the $800,000 would be paid "without setoff of sums paid by Ki Kim."

B.   Misrepresentation

Either a fraudulent or a material misrepresentation made by one party, upon which the other party relied justifiably, also renders the contract voidable. Restatement (Second) of Contracts § 164. Tea Garden complains that it was induced by a fraudulent misrepresentation to enter into the Settlement Agreement. Yet Tea Garden does not identify any representation that LPP knew to be untrue. Therefore, the Court cannot find the Settlement Agreement to be voidable due to a fraudulent misrepresentation.

However, it is sufficient to find a contract voidable for the misrepresentation to have been material, even when the misrepresentation is not fraudulent. "A misrepresentation is an assertion that is not in accord with the facts." Restatement (Second) of Contracts § 159. Concealment is equivalent to a misrepresentation. Restatement (Second) of Contracts § 160 cmt. a. "A person's non-disclosure of a fact known to him is equivalent to [concealment]" when "he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." Restatement (Second) of Contracts § 161(b).

LPP knew the amount of potential liability to which Tea Garden would be exposed by virtue of LPP's agreement with Kim. See Restatement (Third) of Suretyship & Guaranty § 22. Yet LPP did not disclose the amount of this potential liability to Tea Garden. The difficult question is whether such information was material under the circumstances.

LPP informed Tea Garden that it had entered into a separate agreement with Kim. In the Settlement Agreement, Tea Garden acknowledged that the amount it has agreed to pay would not

5

be setoff by any sums paid by Kim. Tea Garden stipulated to a judgment against it in the approximate amount of $1,345,000.00. Thus, Tea Garden had sufficient information at the time that it entered into the Settlement Agreement to realize that it had a potential exposure of up to the amount of the judgment, given its potential liability to Kim as guarantor, and that Kim had paid some sum as guarantor, making such liability more certain than speculative. Therefore, the exact amount that Kim agreed to pay LPP was not material. Its non-disclosure, therefore, did not constitute a material misrepresentation. Since LPP made neither a fraudulent nor a material misrepresentation to induce Tea Garden to enter into the Settlement Agreement, the Settlement Agreement is not voidable due to misrepresentation.

  C. Duress

"If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Restatement (Second) of Contracts § 175. A threat is considered improper if "what is threatened is a criminal prosecution" or "what is threatened is the use of civil process and the threat is made in bad faith." Restatement (Second) of Contracts § 176(1)(b),(c).

According to Paul and Infee Covell, the Magistrate Judge remarked to Jean Chu and them that there could be a disbarment or criminal prosecution in this case if not settled. Such remark does not constitute an improper threat of criminal prosecution or civil process, because it merely reiterated the circumstances already known to the parties. The SBA has already counterclaimed against Tea Garden, its officers, and counsel alleging fraud, misrepresentation, violation of the False Claims Act, malicious prosecution and abuse of process. Thus, the parties knew that if

they entered into a Settlement Agreement, they could end the pursuit of these counterclaims. Paul Covell knew that his alleged conduct exposed him to both disbarment and to criminal prosecution. The parties were aware of such onerous prospects even without the Magistrate Judge mentioning them. Moreover, the Magistrate Judge did not convey that disbarment or criminal prosecution would be a definite consequence of failing to reach a Settlement Agreement. Nor did the Magistrate Judge promise that disbarment or criminal prosecution would not be pursued if a Settlement Agreement was reached.

The Court finds that the Magistrate Judge's remarks concerning the possibility of disbarment or criminal prosecution did not constitute an improper threat. Furthermore, although Tea Garden may have entered into the Settlement Agreement in an attempt to avoid Paul Covell's disbarment or criminal prosecution, Tea Garden was not induced by the Magistrate Judge's comments, but by its own perceptions of the situation. Because no improper threat induced Tea Garden to enter into the Settlement Agreement, the Settlement Agreement is not voidable for duress.

## III. Conclusion

Tea Garden did not enter into the Settlement Agreement due to mistake, misrepresentation or duress. Therefore, the Settlement Agreement is not voidable. Accordingly, the Motion for Relief from the 2/14/06 Settlement Agreement is denied.

**ENTER:**

**DATED:** November 18, 2008      _____/s/_____
RAYMOND L. FINCH
SENIOR DISTRICT JUDGE